TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00539-CV






Socorro Independent School District, et al., Appellants



v.



State Board of Education, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-10863, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING






 This is a school finance case. Appellant Socorro Independent School District and
other school districts (1) (collectively "Socorro") argue that pursuant to constitutional and statutory
appropriations, they were deprived of approximately $90 million of a supplemental technology
allocation that the appellee State Board of Education (the "Board") refused to distribute. After an
extensive review of the constitutional and statutory provisions at issue, the trial court declared that
the Board had no authority to distribute the amount sought by Socorro to increase the technology
allotment. We will affirm.


 BACKGROUND

This case presents the question of whether funds from the available school fund
were properly allocated between the state textbook fund and the school finance system pursuant
to Texas Education Code section 31.021. In order to fully understand the issues presented in this
case, we will first briefly describe how public schools in Texas are financed. Public schools in
Texas are financed by three mechanisms: 1) local ad valorem tax revenue, 2) the available school
fund, and 3) general revenue from the state. Tex. Educ. Code Ann. § 42.251(b) (West 1996). 
The state's financial responsibility to fund public schools comes from the latter two sources. 
Depicted below is a flowchart illustrating the interrelationship between the available school fund
and general revenue. (2)



The available school fund is a constitutional and statutory fund that contains
revenue dedicated for public education. See Tex. Const. art. VII § 5; Tex. Educ. Code Ann.
§ 43.001(b) (West 1996). It consists primarily of income derived from the assets of the permanent
school fund, which is a perpetual endowment for the public schools that draws enormous amounts
of interest, dividends, and rental income. See Tex. Educ. Code Ann. § 43.001(b) (West 1996).
The available school fund also includes one-fourth of all revenue derived from state occupation
and gasoline taxes, as well as other appropriations to the fund made by the Legislature for public
school purposes. See id. 

Article VII, section 5(a) of the Texas Constitution commands that "[t]he available
school fund shall be applied annually to the support of the public free schools. . .[and] shall be
distributed to the several counties according to their scholastic population and applied in such
manner as may be provided by law." Tex. Const. art. VII § 5(a). As demonstrated by the right
side of the flow chart, each year the Legislature divides the total amount in the available school
fund between the school finance system and the state textbook fund. The majority of the fund is
allocated to the school finance system and distributed per capita to the school districts based upon
the average daily attendance of the pupils within each district. See Tex. Educ. Code Ann.
§ 43.001(c) (West 1996). The balance of the fund is directed to the state textbook fund pursuant
to Texas Education Code section 31.021. See Tex. Educ. Code Ann. § 31.021 (West 1996). 

On May 27, 1995, the 74th Legislature passed Senate Bill No.1, which included
new provisions now codified under Texas Education Code section 31.021. Texas Education Code
section 31.021 provides in relevant part:


(a) The state textbook fund consists of:


 (1) an amount set aside by the State Board of Education from the available
school fund;


 (2) all funds accruing from the state's sale of disused textbooks; and


 (3) all amounts lawfully paid into the fund from any other source.


(b) The State Board of Education shall annually set aside out of the available
school fund of the state an amount sufficient for the board, school districts, and
open-enrollment charter schools to purchase and distribute the necessary
textbooks for the use of the students of this state for the following school year. 
The board shall determine the amount of the available school fund to set aside
for the state textbook fund based on:


* * *



 (2) a requirement to provide an allotment to be distributed to each district
equal to $30 per student in average daily attendance, or a greater amount
as determined under Subsection (c) to be used only to:


 (A) provide for the purchase by school districts of electronic textbooks
or technological equipment that contributes to student learning; and


 (B) pay for training educational personnel directly involved in student
learning in the appropriate use of electronic textbooks and for
providing for access to technological equipment for instructional
use;


* * *


(c) After setting aside the amounts specified in Subsection (b), the State Board of
Education shall determine the amount remaining in the available school fund
that is available for distribution under Chapter 43 for the following school
year. The board shall use any amount by which the amount available for
distribution under Chapter 43 for the following school year exceeds the amount
available for distribution under Chapter 43 for the 1995-1996 school year to
increase the allotment under Subsection (b)(2) 



Tex. Educ. Code Ann. § 31.021 (West 1996) (emphasis added).

Thus, section 31.021 mandates that the Board fund: (1) an amount necessary to
cover costs for print textbooks; (3) (2) an amount equal to $30 per student for electronic textbooks
or technological equipment; (4) and, if available, (3) a supplemental amount per student in addition
to the $30 to be used for technology and electronic textbooks. It is this third element, the
supplemental technology allotment, that forms the basis of the controversy at issue. 

Subsection (c) of 31.021 mandates that after setting aside the amounts necessary
for purchasing textbooks and providing $30 per student for electronic textbooks and technological
equipment, as well as emergency expenses caused by unexpected attendance increases, the Board
must:

1. Determine the amount remaining in the available school fund that is available
for distribution under Chapter 43 for the following school year; then,


2. Increase the technology allotment under subsection (b)(2) by the difference
between the amount available for the following school year and the amount
available for the 1995-1996 school year.



Thus, pursuant to section 31.021(c), any surplus from that calculation must be distributed to
supplement the technology allotment and not diverted to the school finance system.

 However, it appears from the record that the General Appropriations Act, passed
a few days prior to the enactment of section 31.021, conflicts with the section 31.021(c) mandate. (5) 
In the General Appropriations Act, the Legislature followed its constitutional mandate and
appropriated the entire available school fund for the upcoming biennium. However, while section
31.021(c) mandated that any increase in the available school fund from the 1995-96 school year
be directed to the state textbook fund in order to supplement technology, the General
Appropriations Act instead increased the amount appropriated to the school finance system for the
1996-97 school year. The state textbook fund was not increased. It was allocated a sum certain
amount of $109 million. This allocation does not provide for any supplemental technology
allotment pursuant to section 31.021(c). Thus the Legislature, in the General Appropriations Act,
committed the amount necessary for the supplemental technology allotment to the school finance
system. 

 The flowchart more accurately depicts this situation. The middle of the flow chart
shows the appropriation of approximately $1.09 billion made by the General Appropriations Act
to the school finance system for the 1996-97 school year. This allocation is contrary to the
formula set forth in section 31.021(c). Under that formula, the 1996-97 per capita distribution
should have remained the same as the 1995-96 distribution, which was approximately $970
million. Any amount in the available school fund in excess of $970 million should have been
directed to the state textbook fund to supplement technology. Therefore, as demonstrated by the
dotted line on the right side of the flowchart, if the Board issued a supplemental technology
allotment pursuant to the formula set forth by section 31.021(c), the necessary funds for this
allotment would have to be transferred back to the state textbook fund from the school finance
system. This would leave the school finance system short approximately $60 million dollars. (6)

 To avoid a $60 million shortfall, the Board authorized a distribution of $30 per
student and refused to authorize a distribution of the $60 million as a supplemental technology
allotment as mandated by section 31.021(c). The Board contends on appeal that because the
Legislature only appropriated an amount equivalent to $30 per student for technology, that is all
it can distribute despite the mandate of section 31.021(c). Socorro, on the other hand, argues that
pursuant to section 31.021(c), the Board must distribute $60 million to supplement technology,
despite any resulting shortfall.

 Moreover, Socorro argues that because only $44 million of the $77 million
appropriated to the state textbook fund for the purchase of printed textbooks was actually spent
on printed textbooks for the school year for which it was appropriated, the $30 million surplus
(i.e., the dollars not needed for printed textbooks) should also be used to supplement technology. 
In summary, Socorro argues that there is a total of approximately $90 million that should have
been allocated to supplement technology--$60 million allegedly misappropriated to the school
finance system and $30 million not used for purchasing printed textbooks. This $90 million could
have supplemented the technology allotment by about $25 per student. 

 In an extensive written opinion, the trial court (7) declared that the Board had no
authority to distribute the increased technology allotment provided for in Texas Education Code
section 31.021(c) because the Legislature in the General Appropriations Act had not funded this
section of the Code. With regard to the $30 million not yet used for purchasing printed textbooks,
the court held that the issue was not ripe for decision and retained jurisdiction to grant the school
districts further relief in the event that the available school fund was not distributed in its entirety
for use in the school year for which it was appropriated. Because the trial court refused to
supplement the technology fund, Socorro appeals.


DISCUSSION

Socorro argues that the language of Article VII, section 5 of the Texas Constitution
is a constitutional appropriation which is directed by legislation. Therefore, Socorro argues that
section 31.021 of the Texas Education Code is the directive of a constitutional appropriation, or
alternatively, is the appropriation itself. Socorro contends that the legislative appropriations in
the General Appropriations Act should, therefore, give way to section 31.021.

Socorro is correct in its assertion that Article VII, section 5 constitutionally
appropriates the funds at issue. See Tex. Const. art. VII, § 5(a). Article VII, section 5(a) of the
Texas Constitution states:


[T]he available school fund should be applied annually to the support of the public
free schools. Except as provided by this section, no law shall ever be enacted
appropriating any part of the permanent or available school fund to any other
purpose whatever; nor shall the same, or any part thereof ever be appropriated to
or used for the support of any sectarian school; and the available school fund
herein provided shall be distributed to the several counties according to their
scholastic population and applied in such a manner as may be provided by law.


Id. (emphasis added).

This constitutional appropriation mandates that the funds be spent "in support of
the public free schools" on a per capita basis. That, however, is the end of the constitutional
mandate. Beyond this, authority is given to the Legislature to allocate the money to the public
schools as it sees fit. The constitutional provision specifies that the fund shall be distributed "in
such a manner as may be provided by law." Id. (emphasis added). Such language has always
empowered the Legislature to direct how the fund shall be distributed within the constraints of an
equal per capita distribution by county. See Travis Cent. Appraisal Dist. v. FM Properties
Operating Co., 947 S.W.2d 724, 733 (Tex. App.--Austin 1997, pet. denied) (when used in a
constitutional provision establishing a general legal principle or administrative framework, the
phrase "as may be provided by law" clearly vests the Legislature with authority to exert
substantial control over the mechanics of the subject matter addressed).

In this case, the $60 million at issue was allocated by the Legislature to the school
finance system through the General Appropriations Act. The Legislature then provided a formula
under section 31.021(c) of the state textbook fund for the allocation of surplus funds to provide
a supplemental technology allotment. Thus, this case presents two statutes by the Legislature that
are conflicting: the mandate in section 31.021(c) directing the Board to set aside $60 million to
supplement technology; and the General Appropriations Act which directs those same funds to the
school finance system. Therefore, the Board is faced with an unfunded mandate to supplement
technology pursuant to section 31.021(c).

The Board does not have the power to expend more money under the state textbook
fund than it is appropriated by the Legislature. This issue was squarely addressed in Attorney
General Opinion H-507, which we find persuasive. (8) In that case, the Legislature had intentionally
changed from appropriating an estimated amount for textbooks to a sum certain appropriation. 
Because of this, the Comptroller indicated that he would refuse to honor any bill payable from the
state textbook fund that would cause expenditures of the fund to exceed the amount specifically
allocated in the appropriations act. The opinion stated that only the Legislature had the authority
to limit the amount of funds that the Board can set aside out of the available school fund for use
in providing free textbooks, and that it had done so by appropriating a sum certain amount to the
state textbook fund. Op. Tex. Att'y Gen. No. H-507 (1975) (Legislature has authority to limit
amount of funds State Board can set aside out of available school fund for textbooks). In its
reasoning, the opinion quoted the following language from Attorney General Opinion O-561:


[I]t would be a radical departure from recognized principles of our form of
government to place control over a large amount of public funds in the hands of
such an administrative board, free from all control of the Legislature. . . . In view
of all of the considerations discussed above, it is our opinion that the Legislature
retains control over the expenditure of the Textbook Fund. . . .



Id. (citing Op. Tex. Att'y Gen. O-561 at 17-18 (1939)).

 Moreover, given the chronology in which the General Appropriations Act and
section 31.021 passed, the Legislature had the opportunity to revise the General Appropriations
Act to provide the Board with funding pursuant to section 31.021(c). However, the Legislature
chose not to do so. If the Legislature did not see fit to provide funding for this mandate, we can
not do it for them. This Court addressed this very issue in Mutchler v. Texas Dep't of Public
Safety, stating:


To transfer unrelated surplus funds to pay for a program that the Legislature has
consistently refused to fund...would thwart the intent of the Legislature and violate
the spirit, as well as the letter of the Texas Constitution. While the members of
this Court are not unsympathetic to the cause advocated persuasively by the
appellants, the time honored principle of separation of powers prohibits us from
doing what the legislature has refused to do.



681 S.W.2d 282, 285 (Tex. App.--Austin 1984, no writ). Socorro's first point of error is
overruled.

 Socorro next contends that the excess $30 million dollars appropriated to the state
textbook fund for printed textbooks should be distributed as the supplemental technology
allotment. Socorro claims that after the Board purchased all of the printed textbooks for the
school year in question, $30 million dollars remained in the textbook fund. However, rather than
using these excess funds to supplement technology, the Board sought to use the funds to purchase
printed textbooks for the following school year. 

 The Board argues that Socorro is not entitled to review of this issue because it is
unsupported by the pleadings. Socorro responds that the issue was tried by consent. The trial
court did consider this issue, but specifically reserved judgment, holding that it was not ripe for
consideration at the time of trial. Furthermore, it is unclear from the record how this $30 million
dollars was subsequently spent. (9) Since there is no ruling on this issue from the trial court, nothing
is preserved for our review. Socorro's second point of error is overruled.


CONCLUSION

 Having overruled Socorro's two points of error, we affirm the judgment of the trial
court.



 
 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: April 30, 1998

Publish
1. Other appellants are: Alpine Independent School District, Balmorhea Independent School District,
Belton Independent School District, Commerce Independent School District, Copperas Cove Independent
School District, Crowell Independent School District, Del Valle Independent School District, El Paso
Independent School District, Everman Independent School District, Fayetteville Independent School
District, Florence Independent School District, Friendswood Independent School District, Frisco
Independent School District, Goree Independent School District, Hardin-Jefferson Independent School
District, Harleton Independent School District, Hays Consolidated Independent School District, Hitchcock
Independent School District, Hudson Independent School District, Hurst-Euless-Bedford Independent
School District, Jasper Independent School District, Kenedy Independent School District, Kilgore
Independent School District, Lamar Consolidated Independent School District, Little Cypress-Mauriceville
Independent School District, Lockhart Independent School District, Los Fresnos Consolidated Independent
School District, Lumberton Independent School District, Lytle Independent School District, Manor
Independent School District, Mason Independent School District, Maypearl Independent School District,
Mesquite Independent School District, Midland Independent School District, Millsap Independent School
District, Mission Independent School District, Munday Independent School District, Nederland
Independent School District, New Boston Independent School District, Orangefield Independent School
District, Pflugerville Independent School District, Port Arthur Independent School District, Port
Neches-Groves Independent School District, Rocksprings Independent School District, Sabinal Independent
School District, San Antonio Independent School District, San Augustine Independent School District, San
Saba Independent School District, Savoy Independent School District, Schertz-Cibolo-Universal City
Independent School District, Seguin Independent School District, Silverton Independent School District,
Stamford County Line Independent School District, Talco-Bogata Consolidated Independent School
District, Texarkana Independent School District, Valley View Independent School District (Hidalgo
County), Vidor Independent School District, Waco Independent School District, Wallis-Orchard
Independent School District, and Waskom Independent School District.
2. The trial court attached this flowchart to its Final Order as an aid to understanding the issues
presented in this case.
3. This amount is mandated by the Texas Constitution, art. VII, § 3, which states, "it shall be
the duty of the State Board of Education to set aside a sufficient amount of the said tax to provide
free textbooks for the use of children attending the public free schools of this State. . . ." Tex.
Const. art. VII, § 3.
4. This allotment has been in effect since the 1992-1993 school year.
5. The General Appropriations Act was passed on May 25, 1995 as House Bill 1.
6. It is unclear how this $60 million dollar balance was calculated. Both parties, however, seem
to agree that this is the correct number to use. Therefore, while we express no opinion as to the
validity of this amount, we will use this figure throughout the opinion as a symbolic number to
represent the excess amount, which according to § 31.021(c) should have been used to supplement
the technology allotment, but which already had been appropriated to the school finance fund.
7. We note that the trial judge in the instant cause presided over Carrollton-Farmers Branch
Independent School District v. Edgewood Independent School District, 826 S.W.2d 489 (Tex.
1992) and gained considerable expertise in the area of school finance.
8. Although Attorney General Opinions are not binding on the courts, they are entitled to
careful consideration.
9. Joe Wisnoski, Coordinator for School Finance and Fiscal Analysis at the Texas Education
Agency, testified that as of the date of trial, December 19, 1996, he was not aware of any current
accounting encumbrances against the $30 million, but he believed that the State Board had
designated the funds for the purpose of pre-purchasing textbooks for the following year. The
parties' briefs do not address the subsequent treatment of these funds, so it is unclear if the funds
were spent in the current (1996-97) year, in order to pre-purchase printed textbooks for the next
year, or whether the funds were transferred to and spent in the following year (1997-98).



ndent School District, El Paso
Independent School District, Everman Independent School District, Fayetteville Independent School
District, Florence Independent School District, Friendswood Independent School District, Frisco
Independent School District, Goree Independent School District, Hardin-Jefferson Independent School
District, Harleton Independent School District, Hays Consolidated Independent School District, Hitchcock
Independent School District, Hudson Independent School District, Hurst-Euless-Bedford Independent
School District, Jasper Independent School District, Kenedy Independent School District, Kilgore
Independent School District, Lamar Consolidated Independent School District, Little Cypress-Mauriceville
Independent School District, Lockhart Independent School District, Los Fresnos Consolidated Independent
School District, Lumberton Independent School District, Lytle Independent School District, Manor
Independent School District, Mason Independent School District, Maypearl Independent School District,
Mesquite Independent School District, Midland Independent School District, Millsap Independent School
District, Mission Independent School District, Munday Independent School District, Nederland
Independent School District, New Boston Independent School District, Orangefield Independent School
District, Pflugerville Independent School District, Port Arthur Independent School District, Port
Neches-Groves Independent School District, Rocksprings Independent School District, Sabinal Independent
School District, San Antonio Independent School District, San Augustine Independent School District, San
Saba Independent School District, Savoy Independent School District, Schertz-Cibolo-Universal City
Independent School District, Seguin Independent School District, Silverton Independent School District,
Stamford County Line Independent School District, Talco-Bogata Consolidated Independent School
District, Texarkana Independent School District, Valley View Independent School District (Hidalgo
County), Vidor Independent School District, Waco Independent School District, Wallis-Orchard
Independent School District, and Waskom Independent School District.
2. The trial court attached this flowchart to its Final Order as an aid to understanding the issues
presented in this case.
3. This amount is mandated by the Texas Constitution, art. VII, § 3, which states, "it shall be
the duty of the State Board of Education to set aside a sufficient amount of the said tax to provide
free textbooks for the use of children attending the public free schools of this State. . . ." Tex.
Const. art. VII, § 3.
4. This allotment has been in effect since the 1992-1993 school year.
5. The General Appropriations Act was passed on May 25, 1995 as House Bill 1.
6. It is unclear how this $60 million dollar balance was calculated. Both parties, however, seem
to agree that this is the correct number to use. Therefore, while we express no opinion as to the
validity of this amount, we will use this figure throughout the opinion as a symbolic number to
represent the excess amount, which according to § 31.021(c) should have been used to supplement
the technology allotment, but which already had been appropriated to the school finance fund.
7. We note that the trial judge in the instant cause presided over Carrollton-Farmers Branch
Independent School District v. Edgewood Independent